SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ELIZA CARMEN RODRIGUEZ, NYSB #5645379**
Assistant United States Attorney
Eliza.Carmen.Rodriguez@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00195-AN** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JOSEPH TYLER BIAMONT,** | |
| **Defendant.** | |

### Introduction

For years, Biamont surreptitiously recorded Minor Victim 1 (MV1), then 15 to 17 years old, while she was nude in the privacy of bathrooms and her own bedroom. He took extraordinary steps to hide his actions, tailoring his methods to capture nude videos of MV1 in various settings. He continued to record even after MV1 had suspicions that he may be recording her and confronted him. He possessed 71 videos of MV1 that depict child pornography. Additionally, he possessed videos of child pornography that contained images of other minor victims.

**Government's Sentencing Memorandum**                                                    **Page 1**

Defendant will be before this Court for sentencing on August 19, 2026, after pleading guilty to Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a) and Possession of Child Pornography, in violation of 18 U.S.C. 2252(a)(5)(B). The government recommends a sentence of 210-months in a global resolution that also resolves Clatsop County Case number 25CR59394. The government requests that the term of imprisonment be followed by a 10-year term of supervised release. The government also recommends a $100 special assessment, forfeiture of the devices in this case and restitution to the victims of this case.

I.      FACTUAL AND PROCEDURAL BACKGROUND

A.      The Offense Conduct

On November 5, 2024, Gearhart Police Department responded to a call of domestic disturbance at a residence in Gearhart, Oregon. (PSR ¶ 19).  When they arrived, they discovered both Defendant and his wife, Adult Witness 1 (AW1), were present. (*Id*.) Defendant's stepmother, Adult Witness 2 (AW2), was also present. (PSR ¶ 20). AW2 told officers that AW1 would not allow Defendant in the residence because she had discovered a USB drive and that its contents are why he was no longer allowed in the home. (*Id.*) Defendant denied knowledge of the USB drive at first, but then later said that it contained images of another woman and that was why AW1 was angry. (*Id.*).

AW1 told officers that she had found the USB drive in her bedroom in a drawer. (PSR ¶ 21). When she installed it in her laptop, she found nude images of MV1, her daughter who had just turned 18 and moved from the house. (*Id.*) The videos were largely from the time that she was a minor. (*Id.*) One of the videos showed MV1 getting undressed in her bedroom. (*Id.*) AW1 told officers that she was aware that defendant had issues viewing pornography and that it was likely he never stopped. (*Id.*) She also told officers that MV1 had thought that she had seen a

**Government's Sentencing Memorandum**                                                    **Page 2**

camera under her bathroom door while she was getting in the shower. When MV1 confronted defendant, he had explained the incident away. (PSR ¶ 22).

Officers met with MV1, who stated that she felt "sick" and "disturbed" after she learned about the videos defendant had recorded. (PSR ¶ 23). She told them that she thought that something was happening with defendant for the past two years and that she had once thought she saw something under the bathroom door and defendant pointing his cell phone at her. (*Id.*) She didn't feel that she had enough to prove her suspicions. (*Id.*) She was shown sanitized photos from the thumb drive and verified that she was the one in the videos. (PSR ¶ 24). She confirmed that some of the videos were from times they were on vacation in Idaho and California. (*Id.*)

A search was executed on the USB drive and its contents. (PSR ¶ 25). 71 videos of MV1 were discovered that had been recorded while she was a child. (*Id.*) While reviewing the videos, it was obvious that they had been recorded without her knowledge. (*Id.*) The videos started in July 2022 when MV1 was 15-years-old and continued until she turned 18. (PSR ¶¶ 26, 30). The videos were recorded while MV1 was in her bedroom, her bathroom, in a tent while she was on vacation, and while she was sunbathing in the yard outside. (PSR ¶¶ 26-33). Investigators believe that the methods used by defendant varied depending on MV1's location. (*Id.*) At times, they are believed to be recorded from a camera concealed in her bedroom smoke detector, or in a device concealed by a towel on the floor next to the toilet, or in a camera concealed by a teddy bear on the floor of MV1's bedroom. (PSR ¶¶ 26, 27 and 29.) At others, it is believed that he slid his phone under the bathroom door, from underneath her bed or from an angle where MV1 would not know she was being recorded. (PSR ¶¶ 28, 30 and 32). The videos either contained MV1 fully nude, getting dressed or undressed, showering, using the restroom, or in swimsuits or bikinis. (PSR ¶¶ 26-33). The videos focused on MV1's private areas.

**Government's Sentencing Memorandum**                                    **Page 3**

Investigators executed a search warrant on defendant's residence. (PSR ¶ 35). During the search, they discovered a shoebox under MV1's bed with a hole cut into the end. (*Id.*) They also discovered a teddy bear where a recording device could have been hidden, but they did not find any concealed recording devices. (*Id.*) When they searched his computer, it was discovered that the USB drive had been connected to defendant's computer approximately 72 times between December 20, 2022 and September 23, 2024. (PSR ¶ 36). Officers also discovered images that appeared to be created with artificial intelligence that were based on distortions of MV1's body. (PSR ¶ 37).

In addition to these videos, investigators found other videos of child pornography depicting other minor victims. (PSR ¶ 34).

**B.     The Charges**

Defendant was charged in a six-count indictment with five Counts of Sexual Exploitation of Children in violation of Title 18, United States Code, Section 2251(a) and one Count of Possession of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). On February 24, 2026, defendant pled guilty to Counts 1 and 6, charging the Sexual Exploitation of children and Possession of Child Pornography.

**II.        GUIDELINES COMPUTATION AND PLEA AGREEMENT**

Pursuant to the plea agreement, in exchange for a guilty plea, the government will recommend that defendant receive a three-level reduction for acceptance of responsibility. The government and defense stipulated to the following guideline computation in the plea agreement:

**For Sexual Exploitation**

| | |
|---|---|
| Base offense level [USSG § 2G2.1(a)] | 32 |
| Offense Involved minor between 12 and 16 [§ 2G2.1(b)(1)(B)] | +2 |
| Defendant was parent or guardian of minor [§ 2G2.1(b)(5)] | +2 |

**Government's Sentencing Memorandum**                                                         **Page 4**

| Adjusted offense level | 36 |
|---|---|

**For Possession of Child Pornography**

| | |
|---|---|
| Base offense level [USSG § 2G2.2(a)] | 18 |
| Material involved prepubescent minor[§ 2G22(b)(2)] | +2 |
| Material involved sadistic or masochistic conduct [§ 2G2.2(b)(4)] | +2 |
| Pattern of activity involving sexual exploitation of a minor [§ 2G2.2(b)(5)] | +5 |
| Use of Computer [§ 2G2.2(b)(6)] | |
| 600 or more images [§ 2G2.2(b)(7)] | |
| Adjusted offense level | 34 |

| Multiple count adjustment [§ 3D1.1(a) and (b)] | +2 |
|---|---|

## III.    DISCUSSION

### A.  Plea Agreement

The parties agree that, under 18 U.S.C. § 3553(a), the advisory sentencing guideline range calculated by the Court is appropriate, resulting in an adjusted advisory guideline range of 168 -210 months of imprisonment. (PSR ¶ 111). The government recommends a sentence of 210 months. (PSR ¶ 11). The government reserved the right to seek any term of supervised release within the statutory range under 18 U.S.C. § 3583(k), which is any term of years not less than 5 years. (*Id*).

### B.  Government's Recommended Sentence

The United States respectfully requests the following sentence: (1) term of imprisonment of 210 months, (2) a 10-year term of supervised release, with the conditions recommended by probation, (3) a $100 special assessment, (3) minimum restitution in the amount of  no less than $3,000 for Minor Victim, Lily.

/ / /

/ / /

### C. Analysis

The guidelines provide the starting point and initial benchmark for sentencing that "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 350 (2007); *see also Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007).

Once the Court correctly computes the guidelines, it may vary from the advisory range if justified under the factors set out in 18 U.S.C. § 3553(a), including the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2); *see also United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc) (reciting sentencing procedure).  Other factors include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(7).  *See also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

Defendant's actions merit the recommended 210 months of imprisonment. An analysis of the factors set out in 18 U.S.C. § 3553(a) also shows that he cannot be in the community unsupervised and should be subject to a 20-year term of supervised release. Child exploitation offenses are extremely serious crimes that "result in perpetual harm to victims and validate and normalize the sexual exploitation of children." *Report to the Congress: Federal Child Pornography Offenses*, United States Sentencing Commission (December 2012), at vi.

**Government's Sentencing Memorandum**                                          **Page 6**

Defendant surreptitiously recorded MV1 for two years, while she was 15-17 years old and at times he knew that she would be nude or in a state of undress. He invaded her private spaces using recording equipment that he hid using various methods and means. He recorded her both in the privacy of her home and when she expected privacy on vacation. He kept the 71 videos that he made on a USB drive so that he could access them over 70 times. This behavior shows the extent he is willing to go to create and keep child pornography. His actions are even more aggravated by the fact that he was a guardian of this child and in a position that should warranted care and protection. Rather than protecting this child, he used that power and access to invade her privacy and create illicit videos of her. His actions extended to possessing videos of other child victims portrayed in child sexual abuse material. The true extent of the harm and trauma that he inflicted upon the victims of this crime cannot be overstated. *United States v. Super*, No. 3:23-cr-05233-BHS, 2023 WL 5952715, at *3 (W.D. Wash. Sept. 13, 2023) ("Harm caused by sexual abuse and exploitation of minor children is incalculable").

Congress has recognized that "where children are used in its production, child pornography permanently records the victim's abuse and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996). Defendant's demonstrated sexual interest in minors, the lengths he went to in order to surreptitiously record a minor in his care, and the fact that he possessed many videos of child pornography compels the conclusion that he should be subject to 10 years of supervised release. *See United States v. Brugnoli-Baskin*, No. 2:22-MJ-00499-MAT-LK, 2022 WL 16636429, at *5 (W.D. Wash. Nov. 2, 2022).

**Government's Sentencing Memorandum**                                    **Page 7**

Defendant created more than 70 videos of secretly recorded child sexual abuse material of a minor in his custody for two years. His conduct warrants a 210-month sentence. Further, because of the seriousness nature of the offense and the extreme harm and danger he has caused to minor children, the government asks the Court to offset those concerns with a longer period of supervised release than what Probation is recommending. The statute allows a term of five years to life. 18 U.S.C. § 2583(k). Probation recommends 5 years. The government asks the Court to impose a 10-year term of supervision.

### D. Restitution

Restitution is mandatory in child pornography cases for "the full amount of the victim's losses as determined by the court," and shall be imposed "in addition to any other civil or criminal penalty authorized by law." 18 U.S.C. §§ 2259(a), (b)(1), (b)(4).  The term "victim" includes both "the individual harmed as a result of a commission of a [child pornography] crime," and, if the victim is under 18, "the legal guardian of the victim" or "another family member." 18 U.S.C. § 2559(c). Under § 2259(b)(2)(B), each victim that makes a restitution request must receive at least $3,000 in restitution.

The government has communicated these rights to the minor victims in this case that have been identified. The government has not received any documentation or restitution requests for MV1 at this time. However, we have received a request for restitution from a minor victim whose images that Defendant possessed - Lily. Lily is requesting $10,000. Pursuant to the Mandatory Victim Restitution Act of 1996 and the Amy, Vicky and Andy Child Pornography Victim Assistance Act of 2018, the government requests that the Court order restitution in the amount of at least $3,000 be awarded to the victim.

///

**Government's Sentencing Memorandum**                                              **Page 8**

**Conclusion**

Based on the foregoing, the government recommends that this Court impose a sentence of 210 months, followed by a 10-year term of supervised release.

Dated: August 12, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Eliza Carmen Rodriguez*
ELIZA CARMEN RODRIGUEZ
Assistant United States Attorney